## Hazleton Area School District
## v. Education Association

*Anthony C. Falvello* and *John D. McAfee,* for plaintiff.

*Peter J. O'Brien,* for defendant.

BROMINSKI, P. J., September 22, 1971.—This matter comes before the court after hearing to determine whether or not the preliminary injunction granted by this court on September 15, 1971, enjoining and restraining defendants from engaging in a strike, should continue or be dissolved.

After hearing, we find the following:

## FINDINGS OF FACT

1. Plaintiff is the Hazleton Area School District, a second class school district under the laws of the Commonwealth of Pennsylvania, with its principal office at Twentieth and Peace Streets, Hazleton, Luzerne County, Pa.

2. Defendant, the Hazleton Area Education Association, is an unincorporated association, having its principal place of business in care of James Hardy, President, 99 Butler Avenue, Conyngham, Luzerne County, Pa.

3. Plaintiff school district is a school district having the responsibility for the education of the various students within the school district and is a public employer within the meaning of the Public Employe Relations Act of July 23, 1970, P.L. 563 (No. 195), 43 PS § 1101.101, et seq.

4. Defendant, the Hazleton Area Education Association, is an employe organization within the meaning of the said Public Employe Relations Act and is duly authorized to bargain collectively on behalf of the professional employes employed by the Hazleton Area School District.

5. Defendant association was certified as the exclusive representative of the employes in the subdivision of the school district for the unit comprised of classroom teachers, guidance counselors, school nurses, dential hygienists, home and school visitors, vice principals on the junior high level, assistants to the principal, head teachers, but excluding all nonprofessional employes, supervisors, first level supervisors and confidential employes as defined in Act 195.

6. This court on September 15, 1971, granted the school district a preliminary injunction enjoining and restraining the members of the association from striking, which strike took effect on said date.

7. The allegations of the school district's complaint state that the association struck prematurely in that the procedural requirements concerning negotiations and mediation required by sections 801 and 802 of the Public Employe Relations Act were not complied with and, secondly, that the strike was a clear and present danger or threat to the health, safety and welfare of the public.

8. At the hearing on September 16, 1971, the school district conceded that the association did comply with the negotiation provisions of sections

801 and 802 of the Act of 1970 and then proceeded to establish the facts in support of its second contention that the strike created a clear and present danger or threat to the health, safety and welfare of the public.

These facts are as follows:

That the strike by the association would have the following effects:

1. It might reduce their State reimbursement to the school district in the amount of $25,000 per diem if the 184-day school year is not completed by June 30, 1972.

2. The expense for custodial and maintenance staffs would continue even if the schools were closed.

3. That the 1971-1972 calendar school year is 184 days and must be completed before June 30, 1972.

4. That if the school year were extended beyond the regular time, that is June 9, 1972, it would affect the repairs to the buildings ordinarily anticipated to be done during the summer.

5. That since the Hazleton School District provides transportation for some two or three thousand private and parochial school students, such service would be terminated.

6. The failure to complete the school term by June 9, 1972, might affect the school district summer school program.

7. That if the members of the association fail to man the classes, the school district could not provide an adequate educational program for the students.

8. There would not be sufficient supervisory personnel to maintain adequate discipline in the classes.

9. If the school year were extended beyond June 9, 1972, it would affect those students seeking summer jobs.

10. The presentation of the college boards would be affected.

11. The night school classes would be affected.

12. State Police drivers' school would be affected.

13. The adult classes would be affected.

14. The extra-curricular activities such as football, three marching bands, and other extra-curricular activities would be affected.

15. The cooperative work program shared by some 50 students and teachers would be affected.

16. The in-service days would be affected.

17. The schools could not be kept open.

## DISCUSSION

At the outset, let it be made clear that the question to be decided here is not whether the teachers' demands are excessive or whether the school district is unresponsive to their needs. Regardless of what this court decides, the real problems involved herein will be resolved only when the teachers and the school district commence renegotiations and enter into a contract.

It must also be emphasized that this is not a question of whether or not public school teachers have a right to strike. This right has been granted to them by the Pennsylvania Legislature in the Public Employe Relations Act of 1970. Its effectiveness is illustrated by the fact that, at the time of this writing, eight school districts in various counties throughout the Commonwealth are on strike. One, Woodrow Wilson High School in Bristol Township, where the teachers are on strike since September 8, 1971, affects 14,000 students.

The present situation is governed by section 1003 of the act, 43 PS §1101.1003, which reads as follows:

"If a strike by public employes occurs after the col-

lective bargaining processes set forth in sections 801 and 802 of Article VIII of this act have been completely utilized and exhausted, it shall not be prohibited unless or until such a strike creates a clear and present danger or threat to the health, safety or welfare of the public. In such cases the public employer shall initiate, in the court of common pleas of the jurisdiction where such strike occurs, an action for equitable relief including but not limited to appropriate injunctions and shall be entitled to such relief if the court finds that the strike creates a clear and present danger or threat to the health, safety or welfare of the public. . . ."

The only question then is: Will the strike, if allowed to continue, create "a clear and present danger or threat to the health, safety or welfare of the public"?

Looked at in this light, what did the legislature intend when it, in 1970, afforded the teachers the right to strike? It obviously knew that the consequences of a teachers' strike would be devastating. It knew that if it resulted in the actual closing of the schools or even a partial closing, as was the case here on September 15, 1971, when some 140 people attempted to assume the responsibility of some 600, it would result in an inadequate educational program for the students. This, in itself, is adverse to the welfare of the people and students of the Hazleton Area School District and it must have been equally recognizable to the legislature that the items of proof set forth above, nos. 1 through 17, usually happen when teachers strike. So they must have intended the court to use some standard other than the above items to define health, safety or welfare of the public, for the vast majority of those consequences enumerated happen whenever a strike by teachers is called. To decide otherwise would mean the court would always be

compelled to grant an injunction automatically every time the teachers struck and this would mean the legislature granting the right to teachers to strike with one hand and taking it away with the other, which would be tantamount to no legislation at all.

The right of the teachers to strike when exercised is most serious. That is why they are required to comply with the negotiating provisions of sections 801 and 802 of the act. When that has been done, as has been done here, then the school district must establish something more than the usual, yet disruptive effect, of a teachers' strike. This, they have not done in the present proceeding.

Accordingly, it is concluded that the school district has failed to meet its burden of proof and the injunction should be dissolved.

With the recommendation that negotiations continue toward a mutual accord between the parties, eliminating any further strike, the court renders the following

### ORDER

It is hereby ordered and decreed that the preliminary injunction granted by this court on September 15, 1971, is hereby dissolved as of Sunday, September 26, 1971, at 12 midnight.